<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TYREIK GOLDEN, | : | Hon. Robert B. Kugler |
| Petitioner, | : | Civil No. 08-2601 (RBK) |
| v. | : |  |
| PAUL SCHULTZ et al., | : | <u>OPINION</u> |
| Respondents. | : |  |

**APPEARANCES:**

    TYREIK GOLDEN, Register Number 56602-066
    Fairton Federal Correctional Institution
    P.O. Box 420
    Fairton, New Jersey 08320
    Petitioner <u>Pro</u> <u>Se</u>

    CHRISTOPHER J. CHRISTIE, United States Attorney
    NEIL RODGERS GALLAGHER, Assistant United States Attorney
    970 Broad Street
    Newark, New Jersey 07102
    Attorney for Respondent

<u>**KUGLER, District Judge**</u>

    On May 23, 2008, Petitioner filed his <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, challenging the calculation of his sentence by the Federal Bureau of Prisons ("BOP"). On August 22, 2008, Respondents filed their answer to the Petition. On September 22, 2008, Petitioner filed his reply. For the reasons expressed below, the Court will grant Petitioner's application for a writ of habeas corpus and will direct the BOP to recalculate Petitioner's sentence accordingly.

The essential facts of this matter are neither complex nor in dispute. On September 25, 2001, Petitioner was sentenced in the Commonwealth of Pennsylvania for certain drug-related offenses; his maximum state prison term was two years incarceration. Since the Pennsylvania court granted him jail credit from July 24, 2001, i.e., the date he was arrested by Pennsylvania officials, to September 24, 2001, i.e., the day before the state sentence was imposed, Petitioner's two-year state prison term expired on July 24, 2003.

On November 27, 2002, that is, about six months prior to the expiration of his state sentence, Petitioner was "borrowed," upon writ of habeas corpus ad prosequendum issued by the United States District Court for the Eastern District of Pennsylvania ("EDPA"), and placed in federal custody in relations to federal charges pending against him at the EDPA. Consequently, from November 27, 2002, and until July 24, 2003, Petitioner remained in primary custody of Pennsylvania and in secondary custody of the federal government. On July 24, 2003, upon expiration of Petitioner's state sentence, the primary custody vested in the federal government, and Petitioner remained in federal custody in anticipation of his federal criminal conviction and sentencing.

On October 28, 2004, that is, about fifteen months after the expiration of his state sentence, Petitioner was sentenced on the basis of his federal conviction. Judge Stewart Dalzell imposed a 140-month sentence and unambiguously directed that this period of 140 months should be credited with: (1) the time Petitioner remained in federal custody in anticipation of his federal criminal conviction and sentencing ("Federal Period"); and (2) the two-year period Petitioner spent in state custody pursuant to his Pennsylvania sentence ("State Period"), i.e., that the 140 month federal sentence should be deemed commenced on July 24, 2001, i.e., the date he was arrested by

Pennsylvania officials. In other words, Judge Dalzell directed that Petitioner's federal sentence was to run retroactively concurrent with Petitioner's state sentence..

In calculating Petitioner's sentence, the BOP awarded Petitioner credit for the Federal Period but refused to give effect to Judge Dalzell's order as to State Period.[1] Explaining the rationale of the BOP's decision, Respondents: (1) provide a lengthy (and entirely correct) discussion of the general sentence-calculating regime;[2] and (2) state that the two-year State Period credit cannot be granted in light of the fact that, by the time of Petitioner's federal sentencing by Judge Dalzell, the state sentence had fully expired, see Docket Entry No. 8, at 13, i.e., Judge Dalzell lacked the power to direct retroactive concurrence.

Respondents' point is well taken, and the Court is mindful of the reasons for Respondents' confusion. That said, Respondents' rationale for failure to comply with Judge Dalzell's order is not warranted in light of the specific facts of this case. In Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), the Court of Appeals for the Third Circuit explained the sentencing court's authority to "adjust" a sentence; this authority is distinct from the BOP's authority under 18 U.S.C. § 3585(b) to "credit" a sentence, even though the benefit to the defendant may be the same. See id. at 131-33. In particular, the "adjustment" that the sentencing court exclusively can award is a sentence reduction resulting from the imposition of a federal sentence that is concurrent with a state sentence. On the other hand, the credit that BOP exclusively awards under § 3585(b) accounts for time served

---

[1] In addition, the BOP gave Petitioner 4 days of credit for those days when Petitioner was taken into custody on previous charges against Petitioner; these previous charges are unrelated to either the state or the federal sentences implicated by the Petition.

[2] A recitation of Respondents' discussion appears superfluous, since the law is well established, and Petitioner does not dispute Respondents' position as to these general points.

in detention prior to the date the federal sentence commences.  See id.; see also United States v. Dorsey, 166 F.3d 558, 564-65 (3d Cir. 1999) (Stapleton, J., concurring) (noting that much of the confusion could be explained by the different uses of the term "credit").[3]

Admittedly, there is a distinction between Ruggiano and the case at bar.  In Ruggiano, Petitioner was sentenced to a federal prison term *while* he was still serving his state sentence.  However, this is a distinction without difference, since Petitioner's federal custody (albeit secondary rather than primary) occurred while Petitioner's state sentence was still undischarged.  Had Judge Dalzell imposed Petitioner's federal sentence any time between November 27, 2002, that is, the date when Petitioner was "borrowed," upon writ of habeas corpus ad prosequendum was issued by the EDPA, and  July 24, 2003, that is, the date when Petitioner's state sentence expired, the case at bar would be indistinguishable in all substantive respects from Ruggiano.  In other words, Respondents' reading of the legal regime suggests that Judge Dalzell could exercise his power to award a downward adjustment at 11:59 p.m. on July 23, 2003, but lost that same power at the stroke of twelve, having it turned into a pumpkin much like in the famous fairytale.

Indeed, had Petitioner's state sentence begun, hypothetically, to run seven years prior – and expired five years prior – to his federal charges (and ensuing federal custody), it is self-evident that Judge Dalzell could not order Petitioner's federal sentence to run retroactively concurrent with the long-expired Petitioner's state sentence.  The same result would be reached had Petitioner fully served his state sentence and be placed in federal custody right at the moment of him exiting the state penitentiary: in such hypothetical scenario, same as in the previous one, the federal sentence would

---

[3] Here, Respondents concede that  Judge Dalzell indeed intended to downwardly adjust Petitioner's federal sentence by two years of the State Period.

not have even a single second of "dual" custody, i.e., a time period when the state and federal custodies are running "alongside" each other.[4]  In contrast, when an inmate's state and federal custodies are coexistent during a certain period of time, it would be indeed anomalous to find that the power of a federal judge to impose a retroactively concurrent sentence is based not on a legal mandate but on the mere incidents of judicial calendar.

      Therefore, this Court finds that, pursuant to the holding of Ruggiano, Judge Dalzell had the power to adjust Petitioner's federal sentence by crediting his federal term of imprisonment with the State Period, i.e., to direct that Petitioner's federal sentence should be deemed commenced on July 24, 2001, and the BOP has no reason to deny implementation of Judge Dalzell's decision.[5]  For the foregoing reasons, Petitioner's application for a writ of habeas corpus will be granted, and the Bureau of Prisons will be directed to credit Petitioner's federal sentence with the 24-month period between July 24, 2001, and July 24, 2003, and to recalculate Petitioner's projected release date accordingly.  An appropriate Order accompanies this Opinion.

                                                        s/Robert B. Kugler
                                                        **ROBERT B. KUGLER**
                                                        **United States District Judge**

Dated: 12/20/08

---

   [4]  Accord N.J.A.C. 10A:71-3.2 (clarifying that the parole eligibility term for concurrent sentences is determined by laying these terms *alongside* one another, so that the parole eligibility date under the aggregated sentences is the later of the two parole eligibility dates).

   [5]  In is well established that a prison sentence is imposed as a deterrent, as well as for the purposes of rehabilitation.  It appears quite plausible that Judge Dalzell's decision to credit Petitioner's federal sentence with the State Period was motivated by rehabilitation-related considerations, e.g., by hope that such downward adjustment would motivate Petitioner to leave the life of crime and become, upon release from confinement, a law-abiding citizen.  This Court has no reason – and, crucially here, no mandate  – to second guess Judge Dalzell's discretion.